1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

May 25, 2021

SEAN F. McAVOY, CLERK

5          UNITED STATES DISTRICT COURT

6         EASTERN DISTRICT OF WASHINGTON

7

KATHRINE R.,

8                              Plaintiff,          NO:  2:19-CV-00334-FVS

9        v.                                        ORDER GRANTING DEFENDANT'S
                                                   MOTION FOR SUMMARY
10   ANDREW M. SAUL,                               JUDGMENT
     COMMISSIONER OF SOCIAL
11   SECURITY,

12                              Defendant.

13

14        BEFORE THE COURT are the parties' cross motions for summary

15   judgment.  ECF Nos. 18, 21.  This matter was submitted for consideration without

16   oral argument.  Plaintiff is represented by Attorney Tom G. Cordell.  Defendant is

17   represented by Special Assistant United States Attorney Lisa Goldoftas.  The Court

18   has reviewed the administrative record, the parties' completed briefing, and is fully

19   informed.  For the reasons discussed below, the Court **GRANTS** Defendant's

20   Motion for Summary Judgment, ECF No. 21, and **DENIES** Plaintiff's Motion for

21   Summary Judgment, ECF No. 18.

ORDER ~ 1

# JURISDICTION

Plaintiff Kathrine R.[1] protectively filed an application for Social Security Disability Insurance (SSDI) on June 19, 2015, Tr. 147, and an application for Security Income (SSI) on June 26, 2015, Tr. 148, alleging an onset date of February 1, 2015, Tr. 308, 314, due to thyroid removal, back issues, spinal stenosis, arthritis, crushed vertebrae, herniated disc, depression, an artificial right knee, and the need for a replacement of the left knee, Tr. 342.  Plaintiff's applications were denied initially, Tr. 201-08, and upon reconsideration, Tr. 211-24.  A hearing before Administrative Law Judge Kimberly Boyce ("ALJ") was conducted on April 24, 2018.  Tr. 124-46.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of vocational expert Michael Swanson.  *Id*.  The ALJ denied benefits on October 22, 2018.  Tr. 47-61.  The Appeals Council denied review on August 12, 2019.  Tr. 1-6.  Plaintiff requested judicial review of the ALJ decision by this Court on October 1, 2019. ECF No. 1.  The ALJ's October 22, 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Plaintiff initiated this action on October 1, 2019.  ECF No. 1. ///

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 42 years old at the alleged onset date.  Tr. 308.  She graduated from high school in 1991 and completed cosmetology school in 1999.  Tr. 343. Plaintiff worked as a cosmetologist from 1999 to 2014.  Tr. 344.  At application, she stated that she stopped working on December 31, 2017 because of her conditions.  Tr. 343.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. §§ 405(g), 1383(c).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.5120(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, February 1, 2015.  Tr. 50.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (DDD) status post two back surgeries; right knee replacement; hypothyroidism; diabetes mellitus; and peripheral neuropathy.  Tr. 50.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equaled the severity of a listed impairment.  Tr. 51.  The ALJ then found that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR §§ 404.1567(a), 416.967(a) with the following limitations:

lift/carry 10 pounds occasionally and less than 10 pounds frequently,

sit for at least 6/8 hours, and stand/walk for 2/8 hours, except the claimant can never climb ladders, ropes or scaffolds, work at unprotected heights or in proximity to hazards such as heavy machinery with dangerous moving parts, or balance, but she can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl.

Tr. 52.

At step four, the ALJ identified Plaintiff's past relevant work as a cosmetologist and found that she could no longer perform this past relevant work. Tr. 59.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: charge account clerk, order clerk, and document preparer.  Tr. 59-60.  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from February 1, 2015, the alleged date of onset, through the date of her decision.  Tr. 60.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her SSDI under Title II and SSI under Title XVI of the Social Security Act.  ECF No. 18-2.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ made a proper step two determination;

2. Whether the ALJ made a proper step three determination;

3. Whether the ALJ properly addressed Plaintiff's symptom statements; and

4. Whether the ALJ made a proper RFC determination.

# DISCUSSION

## 1.    Step Two

Plaintiff challenges the ALJ's step two determination by asserting that she failed to address spinal stenosis and that she failed to find depressive disorder and anxiety severe at step two.  ECF No. 18-2 at 5-6.

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment.  20 C.F.R. §§ 404.1521, 416.921.  "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).  At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe.  *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

The step-two analysis is "a de minimis screening device used to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  An impairment is "not severe" if it does not "significantly limit" the ability to conduct

1    "basic work activities."  20 C.F.R. §§ 404.1522(a), 416.922(a).  Basic work

2    activities are "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

3    404.1522(b), 416.922(b).

4        The ALJ identified Plaintiff's severe impairments as degenerative disc

5    disease, right knee replacement, hypothyroidism, diabetes mellitus, and peripheral

6    neuropathy.  Tr. 50.  The ALJ did not discuss Plaintiff's spinal stenosis at step two,

7    but did discuss Plaintiff's mental health impairments and found them to be

8    nonsevere.  Tr. 50-51.

9    **A.    Spinal Stenosis**

10        Plaintiff points to imaging that shows she has spinal stenosis along with the

11    degenerative disc disease.  ECF No. 18-2 at 5.  A September 2014 MRI showed

12    mild to moderate stenosis present at L1-2, L3-4, L4-5, and L5-S1.  Tr. 653.  A

13    September 2015 MRI showed severe stenosis at L3-4 and L4-5.  *Id.*  Plaintiff then

14    asserts that the treating physician rule applies and asserts that the ALJ failed to

15    provide a reason for ignoring Plaintiff's spinal stenosis at step two.  ECF No. 18-2

16    at 5-6.  Plaintiff is accurate that the ALJ should give more weight to the opinion of

17    a treating physician than to the opinion of an examining physician.  *See Orn v.*

18    *Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  However, Plaintiff failed to address any

19    treating physician opinion.  Therefore, the treating physician rule does not apply in

20    this situation at this step of the sequential evaluation process.  Furthermore, the

21    ALJ addressed stenosis in the RFC.  Tr. 53-55.

The Ninth Circuit has recently reiterated its holding that step two is a screening tool:

> Step two is merely a threshold determination meant to screen out weak claims. *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at \*5 (S.S.A. July 2, 1996). The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 0140, 1048-49 (9th Cir. 2017). Here, step two was decided in Plaintiff's favor. Tr. 50. Additionally, the ALJ addressed the stenosis when discussing the RFC determination. Therefore, Plaintiff could not have been prejudiced as any alleged error is harmless and cannot be a basis for remand. *Buck*, 869 F.3d 1049.

**B.    Mental Health Impairments**

Plaintiff argues that the ALJ erred in finding her depression and anxiety as nonsevere. ECF No. 18-2 at 6.

The ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Tr. 50. Plaintiff points to the opinion of Nurse Practitioner Debra Pugh that Plaintiff would be off task 20% of the day

due to major depressive disorder and generalized anxiety disorder.  ECF No. 18-2

at 6 *citing* Tr. 1126-30.  Plaintiff argues that the ALJ did not provide legitimate

reasons for rejecting the opinion citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th

Cir. 1995).  ECF No. 18-2 at 6.  The Court in *Lester* held that the ALJ was required

to provide specific and legitimate reasons for rejecting the opinions of  treating and

examining acceptable medical sources.  81 F.3d 830-31.  However, a Nurse

Practitioner is not an acceptable medical source in this case because this case was

filed prior to March 27, 2017.  20 C.F.R. §§ 404.1502(a), 416.902(a).  Therefore,

the ALJ can reject Nurse Pugh's opinion with reasons germane to the opinion.  *See*

*Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

       The ALJ rejected Nurse Pugh's opinion because there was no support for the

opinion, citing to treatment notes showing normal attention span and

concentration, and found that mental health treatment had been infrequent.  Tr. 58.

While the Court acknowledges that it is a questionable practice to chastise one with

a mental impairment for the exercise of poor judgment in seeking rehabilitation,

*Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), inconsistency with the

medical evidence is a germane reason to discount an opinion, *see Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  Therefore, the ALJ did not err in

rejecting the opinion.

       Furthermore, as addressed in detail above, the step two determination was

made in Plaintiff's favor.  Therefore, Plaintiff could not have been prejudiced as

any alleged error is harmless and cannot be a basis for remand.  *Buck*, 869 F.3d

1049.  The Court will not disturb the ALJ's step two determination.

**2.    Step Three**

Plaintiff argues that she meets or equals Listing 1.04 and the ALJ should

have called a medical expert.  ECF No. 18-1 at 7-10.

If a claimant has an impairment or combination of impairments that meets or

equals a condition outlined in the "Listing of Impairments," then the claimant is

presumed disabled at step three, and the ALJ need not to consider his age,

education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  The ALJ

is required to evaluate the relevant evidence before concluding that a claimant's

impairments do not meet or equal a listing impairment.  *Lewis v. Apfel*, 236 F.3d

503, 512 (9th Cir. 2001).  Here, the ALJ concluded Plaintiff did not meet or equal

Listing 1.04 in one sentence: "The objective medical evidence of record does not

establish these criteria to the extent needed to meet these listings and the claimant

is noted to be able to perform fine and gross movements effectively per 1.00B2c of

the listing and ambulate effectively per 12.00B2b of the listings."  Tr. 51.  At no

point in the step three determination did the ALJ discuss the medical evidence in

relation to Listing 1.04.  *Id*.

Here, Plaintiff is arguing that she meets or equals the listing requirements,

and not that the ALJ failed to evaluate the medical evidence.  ECF No. 18-2 at 6-

10.  Plaintiff's argument amounts to nothing more than an alternative interpretation

of the evidence.  When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1098.  Therefore, the Court will not disturb that ALJ's determination.

Even if Plaintiff had adequately challenged the ALJ's step three determination, she was only required to evaluate the medical evidence before concluding that Plaintiff did not meet or equal a listing, she was not required to evaluate the evidence under the heading of step three.  *See Lewis*, 236 F.3d at 513.  The ALJ discussed the medical evidence relevant to the Listing 1.04 elsewhere in her decision.  AR 53-55 (discussing imaging, gait, ambulation, range of motion, sensation, and strength).

Plaintiff also asserts that the ALJ should have called a medical expert to testify regarding Listing 1.04.  ECF No. 18-2 at 10.  The ALJ is only required to call a medical expert in three circumstances: (1) she was ordered to call a medical expert by the Appeals Council or Federal court; (2) there is a question about the accuracy of medical test result; or (3) she is considering finding that the claimant equals a medical listing.  HALLEX I-2-5-34.  While Plaintiff argues that she meets or equals a listing, as addressed above, this is an alternative interruption of the evidence.  Therefore, the ALJ did not err in her step three determination.

**3.    Plaintiff's Symptom Statements**

Plaintiff argues that the ALJ erred in her treatment of her symptom

1  statements.  ECF No. 18-2 at 10-16.

2        An ALJ engages in a two-step analysis when evaluating a claimant's

3  testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

4  whether the claimant has presented objective medical evidence of an underlying

5  impairment which could reasonably be expected to produce the pain or other

6  symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "The

7  claimant is not required to show that his impairment could reasonably be expected

8  to cause the severity of the symptom he has alleged; he need only show that it

9  could reasonably have caused some degree of the symptom." *Id*.

10        Second, "[i]f the claimant meets the first test and there is no evidence of

11  malingering, the ALJ can only reject the claimant's testimony about the severity of

12  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

13  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

14  citations and quotations omitted).

15        The ALJ stated that Plaintiff's "statements concerning the intensity,

16  persistence and limiting effects of these symptoms are not entirely consistent with

17  the medical evidence and other evidence in the record for the reasons explained in

18  this decision."  Tr. 53.  The ALJ rejected Plaintiff's symptom statements for six

19  reasons: (1) her reported activities were inconsistent with the severity of reported

20  symptoms; (2) she failed to submit records from CPS; (3) she failed to follow her

21  doctor's orders; (4) she failed to follow through with treatment; (5) she

demonstrated drug seeking behavior; and (6) her reported symptoms were inconsistent with the medical evidence.  Tr. 53-56.

The ALJ's first reason for rejecting Plaintiff's symptom statements, that her reported activities were inconsistent with the severity of reported symptoms, is not specific, clear and convincing.  A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ provided four examples of how Plaintiff's activities were inconsistent with her testimony.  First, the ALJ found that the ability to walk to lose weight was evidence that she was not as physically restricted as she alleged.  Tr. 53, 55.  Second, the ALJ found that the ability to ride in a car out to Nebraska in just a day and a half was inconsistent with the reported need to stop every half an hour while driving.  Tr. 53.  Third, the ALJ found that CPS placing an infant family member in her care was evidence that she could work, because "childcare is much like a job in terms of having to be alert, oriented, and emotionally stable; as

well as being able to sit/stand/walk to some extent, follow a schedule, remember,

focus, concentrate, persist, make decisions, interact, attend appoints, etc." Tr. 53.

Fourth, the ALJ found that Plaintiff's ability to cook from scratch conflicted with

her June 2016 complaints. Tr. 54. Fifth, the ALJ found that her reported falls

suggest that she was more active than she should have been during the recovery

phase. Tr. 55.

The Court acknowledges that the ALJ should not rely on more common

daily activities such as walking, riding in a car, caring for a child, or preparing

meals as reasons to reject her symptom statements. The Ninth Circuit has warned

ALJs against using simple household activities against a person when evaluating

their testimony:

> We have repeatedly warned that ALJs must be especially cautious in
> concluding that daily activities are inconsistent with testimony about
> pain, because impairments that would unquestionably preclude work
> and all the pressures of a workplace environment will often be
> consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Therefore, this fails to

meet the specific, clear and convincing standard.

The ALJ's second reason for rejecting Plaintiff's symptom statements, that

she failed to submit records from CPS, is not supported by substantial evidence.

At the hearing, Plaintiff testified that her primary care provider would be

completing a statement regarding her physical health related to caring for a child to

be provided to CPS. Tr. 133-34. After the hearing, the ALJ sent a letter to

Plaintiff's attorney requesting that the records from this evaluation be submitted into evidence. Tr. 280. In her decision, the ALJ stated that "[w]hile the undersigned asked for copies of these specific records, the claimant submitted other records. Hence, it is inferred that these records were not helpful to this claim." Tr. 53. However, a review of the records demonstrated that this evaluation was submitted. Exhibit 23F is an Applicant Medical Report from the Department of Social and Health Services Children's Administration. Tr. 1392. Exhibit 23F was submitted to the record following the hearing, but before the ALJ's decision. Tr. 67. Therefore, this reason is not supported by substantial evidence.

The ALJ's third and fourth reasons for rejecting Plaintiff's symptom statements, that she failed to follow her doctor's orders and that she failed to follow through with treatment, are specific, clear and convincing. Plaintiff failed to challenge these reasons in her briefing. ECF No. 18-2 at 11-16. Therefore, the Court will not address them further. *See Carmickle v. Comm'r, Soc. Sec Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening

ORDER ~ 18

1
2
3

brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

4  *Independent Towers of Wash. v. Wash*., 350 F.3d 925, 929 (9th Cir. 2003).[2]

5  Moreover, the Ninth Circuit has repeatedly admonished that the court will not

6  "manufacture arguments for an appellant" and therefore will not consider claims

7  that were not actually argued in appellant's opening brief. *Greenwood v. Fed.*

8  *Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994).

9      The ALJ's fifth reason for rejecting Plaintiff's symptom statements, that she

10  demonstrated drug seeking behavior, is specific, clear and convincing. Drug-

11  seeking behavior is an appropriate basis for discounting a claimant's complaints.

12  *See Lewis v. Astrue,* 498 F.3d 909, 910 (9th Cir. 2007). The ALJ found that there

13  was "significant evidence of aberrant behavior with narcotic medication that

14  suggests another motive for her pain complaints." Tr. 56. Specifically, the ALJ

15  found that Plaintiff "took medication differently than prescribed, wanted early

16  refills, was negative for prescribed narcotics on a urine drug screen, and received

17  medication from multiple sources without reporting this to providers." *Id*.

18      The ALJ's findings are supported by substantial evidence. On June 30,

19
20
21

[2]Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

ORDER ~ 19

2015, Bob Ebel stated the following:

> She was seen approximately one week ago in the ER for worsening back pain. She had had a refill of her current pain medication on 9 June which was a 30 days supply. She notes her back pain was not covered by her prescription and went to the ER. [P]atient was given pain medication from her surgeon during the month of May as well as pain medication in April and May clinic. The urine drug screen from June 8 was negative for all narcotics. Subsequently her pain contract was voided. . .

Tr. 829. He further stated that after discussing this with Plaintiff, it was unclear if "patient had taken extra pain medicine or if pain medicine was not utilized [by] patient." Tr. 832. On July 20, 2015, Dr. Verhage stated the following:

> Patient ran out of medications prior to her next refill because she took some extra of her usual pain medications along with the supply that the surgeon had prescribed and therefore came up short. She does understand that she took this medication differently tha[n] it was prescribed. She does understand that this is a pain mediation contract violation. Patient however believes this is related to pain flare and states that she can stay on her usual dose of pain medications and comply with her pain contract.

Tr. 817. On July 23, 2015, Dr. Walby stated that "I reviewed with her last summer and current expressed concerns by her [primary care provider] treatment teams regarding her use patterns and requests for fills." Tr. 649. Since the ALJ's reason is supported by substantial evidence, it meets the specific, clear and convincing standard.

The ALJ's sixth reason for rejecting Plaintiff's symptom statements, that her reported symptoms were inconsistent with the medical evidence, is specific, clear

1  and convincing.  Objective medical evidence is a "relevant factor in determining

2  the severity of the claimant's pain and its disabling effects," but it cannot serve as

3  the only reason for rejecting a claimant's credibility.  *Rollins v. Massanari*, 261

4  F.3d 853, 857 (9th Cir. 2001).  The ALJ found that imaging reports failed to

5  support her complaints both before her 2016 surgery, Tr. 54 *citing* Tr. 688, and

6  after her fall in 2016, Tr. 55 *citing* Tr. 987.  Also, the ALJ found that objective

7  findings failed to support Plaintiff's complaints of knee pain.  Tr. 55.

8       In conclusion, the ALJ provided specific, clear and convincing reasons to

9  support her determination rejecting Plaintiff's symptom statements.  *See*

10 *Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the

11 ALJ provided four reasons to discredit the claimant, two of which were invalid);

12 *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)

13 (affirming a credibility finding where one of several reasons was unsupported by

14 the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear

15 from the record that the . . . error was inconsequential to the ultimate nondisability

16 determination").

17 **4.    Residual Functional Capacity**

18      Plaintiff challenges the ALJ's RFC determination.  ECF No. 18-2 at 17-19.

19 Plaintiff's argument is derivative of her step two and symptom statement

20 challenges.  *Id*.  The ALJ did not harmfully err at step two or in the treatment of

21 Plaintiff's symptom statements.  Therefore, the Court will not disturb the ALJ's

RFC determination.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment so long as it is supported by substantial evidence. 42 U.S.C. § 405(g). After review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 18, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 21, is

**GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the **Defendant**, and **CLOSE** the file.

DATED this 25th day of May 2021.



Stanley A. Bastian
Chief United States District Judge